UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THE UNITED STATES OF AMERICA                    04-CR-173E

      -vs-                                    MEMORANDUM
                                                and
JAMES GARDIN                                    ORDER[1]

---

Defendant James Gardin is charged in a one-count indictment with possession, in and affecting commerce, of firearms in violation of 18 U.S.C.§§922(g)(1) and 924(a)(2).  On February 25, 2005, along with various discovery motions, Gardin filed a motion to suppress evidence seized during a warrantless search of a premises located at 1711 Fillmore Avenue, Buffalo, New York June 28, 2004 (Dkt. #20).  On April 11, 2005, the date scheduled for a hearing on this motion, Gardin made another motion to suppress statements Gardin made, also on June 28, 2004, to Buffalo Police Officer Gregory Kwiatkowski. (See Dkt. ## 25, 26 and minute entry dated 04/11/05).  A hearing on these motions was held before Magistrate Judge Hugh B. Scott on May 5, 2005 and continued thereafter on May 27th, June 13th, June 21st and June 28th.  The parties were given the opportunity to file additional memoranda on the issues raised during the course

---

[1]This decision may be cited in whole or in any part.

of the hearing and, after numerous adjournments for extensions of time, the matter was submitted to the Magistrate Judge for decision on February 28, 2006.[2]

On March 30, 2006 Magistrate Judge Scott issued a Report and Recommendation ("R&R") recommending a denial of the motion to suppress as to the evidence seized during the warrantless search and a granting of the motion as to Gardin's statements to Officer Kwiatkowski.   On April 28, 2006 the government filed objections to the R&R, objecting only to that portion of the recommendation that would grant the suppression of the statements.  The matter was submitted to the Court for decision on September 1, 2006.[3]

The District Court "shall make a *de novo* determination of those portions of the ∗∗∗ [R&R] to which objection is made." 28 U.S.C. §636(b)(1)(C); *United States* v. *Raddatz*, 447 U.S. 667, 675-676 (1980); *Sieteski* v. *Kuhlmann*, 2000 WL 744112, *1 (W.D.N.Y. 2000).  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge", and may adopt

_____

[2] Only the government filed a memorandum of law (Dkt. #49). Despite the fact that many of the adjournments were granted to defense counsel so as to allow him more time to file a memorandum in support of his motions, the defendant filed no additional papers.

[3] This matter has been substantially delayed.  Despite numerous extensions of time to file objections granted at the request of defense counsel, defendant filed no objections to the R&R. The return date for the motion hearing on the government's objections was also adjourned numerous times upon defense counsel's request, yet the matter was ultimately 'submitted on the papers'.  In the meantime, defendant filed, *pro se,* what purports to be several motions – one for bail pending trial and a hearing relative thereto, one for dismissal of the indictment, and an application describing numerous complaints about his retained counsel and appears to request that new counsel be appointed under 18 U.S.C. §3006A.  The Court will address these matters in a separate Order.

those parts of the R&R to which no specific objection is raised so long as such are not clearly erroneous.  28 U.S.C. §636(b)(1)(C); *see also Black* v. *Walker*, 2000 WL 461106, *1 (W.D.N.Y. 2000).  Objections to a Magistrate Judge's Report and Recommendation in this District are also governed by Rule 58.2 of the Local Rules of Criminal Procedure for the United States District Court for the Western District of New York ("Local Rules").  Local Rule 58.2(a), in pertinent part states:

> (1) Review of a Magistrate Judge's orders or of his or her proposed findings of fact and recommendations for disposition shall be governed by 28 U.S.C. § 636(b)(1).
>
> \* \* \*
>
> (2) All orders of the Magistrate Judge issued pursuant to these rules, as authorized by 28 U.S.C. §636(b)(1)(A), shall be final unless within ten days \* \* \* a party files a written statement specifying the party's objections to the Magistrate Judge's order.  The specific matters to which the party objects and the manner in which it is claimed that the order is clearly erroneous or contrary to law shall be clearly set out.
>
> (3) A party may object to proposed findings of fact and recommendations for dispositions submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), by filing \* \* \* written objections to the proposed findings and recommendations within ten days \* \* \* The written objections shall specifically identify the portions of the proposed findings and recommendations to which

objection is made and the basis for such objection and
shall be supported by legal authority.

The government has objected to Judge Scott's finding that the statements
made by Gardin to Kwiatkowski were in violation of his Fifth Amendment rights
because they were elicited while in custody and represented by counsel and after
counsel instructed the police not to ask his client any questions.  Hence, the
government objects to the recommendation that the statements be suppressed.
The objections are presented to this Court by way of a literal "copy and paste"
from the papers the government submitted to Magistrate Judge Scott. (Compare
Dkt. #49, pp. 11-14 with Dkt. #54, pp. 2-5).  The government's approach in this
regard is strikingly similar to the approach taken by the defendant in *Camardo* v.
*General Motors Hourly-Rate Employees Pension Plan,* wherein Chief Judge Arcara
stated:

> " *** It is improper for an objecting party to attempt to
> relitigate the entire content of the hearing before the
> Magistrate Judge by submitting papers to a district
> court which are nothing more than a rehashing of the
> same arguments and positions taken in the original
> papers submitted to the Magistrate Judge. Clearly,
> parties are not to be afforded a "second bite at the
> apple" when they file objections to a Report and
> Recommendation, as the "goal of the federal statute
> providing for the assignment of cases to magistrates is

- 4 -

to 'increas[e] the overall efficiency of the federal judiciary.'" *McCarthy* v. *Manson,* 554 F.Supp. 1275, 1286 (D.Conn.1982), *aff'd,* 714 F.2d 234 (2d Cir.1983) ( *quoting Nettles* v*. Wainwright*, 677 F.2d 404, 410 (Former 5th Cir.1982) (en banc)) (footnote omitted). "The purpose of the Federal Magistrates Act is to relieve courts of unnecessary work." *Park Motor Mart, Inc.* v. *Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980). There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge.

"Defendant in the instant action attempted to take a 'second bite' when it filed objections to the Report and Recommendation. Instead of citing objections to specific portions of the proposed findings and recommendations, defendant merely submitted a revised version of the same arguments it presented to the Magistrate Judge. Entire portions of the brief were transposed into the objections"

806 F.Supp. 380, 381 - 82 (W.D.N.Y. 1992)

The government's attempt to re-argue the same issues it presented to Judge Scott is not the "specific objections" (thereby warranting *de novo* review) contemplated by the aforementioned statutes, rules or case law. The government merely re-argues that the defendant's rights were not violated because the statements were spontaneous. This is the exact same argument, in the exact

same form, that was presented to Judge Scott and rejected. The government fails to point out why Judge Scott was wrong in rejecting this argument or how he misapplied the law or facts as presented to him. The R&R will therefore be reviewed only for clear error. *Ibid.; Barratt* v. *Joie*, 2002 WL 335014,*1 (S.D.N.Y. 2002) (citing, *inter alia, Camardo* in finding that "[w]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."); *see also Dennard* v. *Kelly*, 1997 WL 9785, *1 (W.D.N.Y. 1997, Elfvin, J.) (discussing *Camardo* and noting that a "proceeding before the Magistrate Judge is not a meaningless dress rehearsal").

Familiarity with the R&R is presumed, hence the facts will be discussed only as they relate to the government's objections. The facts salient to the Fifth Amendment issue, as determined by Judge Scott and not disputed by the parties, are as follows. Officer Kwiatkowski testified that on the day of the incident in which Gardin's purported girlfriend had complained that he had assaulted her with a hammer and threatened her with a gun, and while at the Fillmore Avenue residence wherein several firearms were seized, Kwiatkowski observed two men speaking on a cell phone. They identified themselves as friends of Gardin, who was on the phone with them at that time. Kwiatkowski asked to talk with Gardin, and in so doing advised him to turn himself in. The next day, Gardin appeared at

the police station with his attorney, Loren Lobban.  According to Kwiatkowski, he met with Gardin and Lobban, advised Gardin that he was under arrest and that he was going to take Gardin downtown to be processed.  He further told Lobban that "nothing was going to happen to [Gardin]" on the trip downtown.

Lobban testified that, prior to turning him over to the police he advised Gardin not to answer any questions.  Upon arrival at the station house, Lobban advised someone sitting at a desk that he wanted to surrender Gardin and, after waiting several minutes, a uniformed officer came into the waiting area and asked: "why did you run from us?"  Lobban instructed Gardin not to answer the question and instructed the officer not to ask any questions.  The officer placed Gardin in handcuffs and, after a brief exchange with Lobban regarding when he would be available for arraignment, led him away.

Officer Kwiatkowski further testified that he advised Gardin of his *Miranda*[4] rights in the police vehicle.  On the way downtown, Kwiatkowski stated that he asked Gardin if he had a New York State pistol permit.  Gardin replied "no." According to Kwiatkowski, Gardin then spontaneously made a series of statements subsequently recorded on what is referred to as a 710.30 form as follows:

---

[4] *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

After being placed under arrest, read his rights while in the back of patrol vehicle #311 Officer asked, "Do you have a pistol permit?"[Defendant] replied, "no." [Defendant] spontaneously stated "I don't even live there on Fillmore, I live on Landon. I own the house but I don't live there, that's her house." [Officer] asked, "your stuff is there though?" [Defendant] said, "Yeah but I left."[Officer] asked, "Were you there yesterday?" [Defendant] replied, "We got into it about what she's doing, she's selling pussy, you guys broke into my house yesterday anyway." [Officer] said, "I thought you don't live there." [Defendant] said, "Oh yeah, your(sic) right. That stuff you found there all must be hers, not mine because I don't live there." [Officer] asked, "Did you pull a shotgun on her?" [Defendant] said, "She pulled it on me and I took it away from her and she ran out the door. If I would have hit her in the head with a hammer she would have had to go to the hospital wouldn't she."

Gardin sought suppression of these statements, arguing that Kwiatkowski was aware that he was represented by counsel and was specifically instructed not to ask him any questions, yet as soon as Gardin was placed in the police car and advised of his *Miranda* rights, Kwiatkowski proceeded to question him, eliciting the offending statements.  The government acknowledged that Gardin was in custody, had been advised of his *Miranda* rights and that Kwiatkowski was aware that he was represented by counsel at the time the statements were

made but argued that the statements were "spontaneous" and, hence, not protected by *Miranda* or the Fifth Amendment.

The Fifth Amendment guarantees that "[n]o person $***$ shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V. *Miranda* v. *Arizona* extends this constitutional right to individuals subject to custodial interrogation by the police. 384 U.S. 436 (1966), *reh'g denied sub nom., United States* v. *Stewart,* 385 U.S. 890 (1966).  Noting that, while *Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers, Magistrate Judge Scott found that the statements were not spontaneous and were made during a conversation initiated by Kwiatkowski.

After review of the R&R and the record herein, this Court finds no clear error in Judge Scott's findings of fact and conclusions.  Specifically, this Court finds no clear error in Judge Scott's conclusion that Gardin's statements were not spontaneous but were initiated by Kwiatkowski while Gardin was in custody and were in violation of his Fifth Amendment rights.[5]  Therefore, Judge Scott's factual

---

[5] Even if this Court were to conduct a *de novo* review, the result would be the same.  To this Court, the statements were clearly in violation of Gardin's constitutional rights.  The argument that they were spontaneous or not initiated by the officer are soundly rejected. Gardin had been advised of his Miranda rights and placed in the police vehicle for transfer to headquarters for booking.  The officer thereafter initiated the conversation by asking about the pistol permit.  This question was obviously intended to elicit further conversation and possible incriminating statements as it related directly to the subject of Kwiatkowski's investigation – the assault and the weapons seized.

findings, conclusions of law and recommendations are accepted and adopted herein.

Accordingly, it is hereby **ORDERED** that the government's objections are overruled and the R&R is adopted in its entirety.

DATED:      Buffalo, N.Y.

September 11, 2006

_____/s/ John T. Elfvin_____
JOHN T. ELFVIN
S.U.S.D.J.